UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Larissa Mullen, Special Administrator of the Estate of Dakota Chrismer,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>Granite City, Illinois, a Municipal Corporation, )<br>Officer Brandon Hartin, Sergeant Justin Rayl, )<br>Sergeant Bradley Skalsky, Officer Joseph )<br>Nicolussi, Officer Zachary Opel, Commander, )<br>Bryan Schmidtke, Paramedic Thomas O'Neil, )<br>Paramedic Richard Moore, Paramedic )<br>Brendan Brooks and Paramedic Megan Black, )<br>)<br>Defendants.  ) | No. |

## COMPLAINT

Plaintiff, Larissa Mullen, through her attorney, Darr Law Offices, Ltd., complains of the defendants, Granite City, Illinois, a Municipal Corporation, Officer Brandon Hartin, Sergeant Justin Rayl, Sergeant Bradley Skalsky, Officer Joseph Nicolussi. Officer Zachary Opel, Fire Commander Bryan Schmidtke, Parademic Thomas O'Neil, Paramedic Richard Moore, Paramedic Brendan Brooks and Paramedic Megan Black, as follows:

## JURISDICTION AND VENUE

1. This is an action for the money damages.

2. Jurisdiction for Plaintiff's federal claims are based on 28 U.S.C. §§ 1331 and 1343(a).

1

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that all defendants exist or reside in this judicial district and the events giving rise to the claims arose in this district.

4. Plaintiff, Larissa Mullen, is the administrator of Dakota Chrismer's estate and seeks redress for the deprivation under color of law of the rights of her son, Dakota Chrismer, as secured under the Constitution and Statutes of the United States, specifically the Eighth (8th) and Fourteenth (14th) Amendments of the United States Constitution, 42 U.S.C. 1983, 1988 and Illinois laws regarding negligence and wrongful death.

5. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. 1367.

## Parties

6. Dakota Chrismer ("Chrismer") was twenty-three (23) years of age when he died on May 16, 2020 due to fentanyl intoxication.

7. At all times mentioned herein, Dakota Chrismer was an individual of diminished capacity due to frequent drug intoxication and secondary mental health illness that resulted in periodic admission to inpatient psychiatric care. This history was known or available the defendants at the time of the events described herein.

8. Plaintiff, Larissa Mullen ("Plaintiff"), is the mother of Dakota Chrismer. She is a resident of Granite City, Illinois. She is the Administrator of her son's estate.

9. In addition to the plaintiff, Chrismer has the following surviving next of kin, namely:

    Larissa Mullen, Mother
    Jeff Seiv, Father

    Shaun Mullen, Brother
    Courtney Jenkins, Sister
    Chelsea Mullen, Sister

10.  Justin Rayl, Joseph Nicolussi, Zachary Opel, Brandon Skalsky and Brandon Hartin are police officers employed by Granite City and upon information and belief reside and/or committed the below described wrongful acts in the federal district where this action is initiated.

11.  Fire Commander Bryan Schmidtke, Thomas O'Neil, Richard Moore, Brendan Brooks and Megan Black are paramedics employed by the Granite City Fire Department ("GCFD").  It is believed that all reside in this federal district and/or committed the below described wrongful acts in the federal district.

12. Defendant, Granite City, is a municipal corporation situated in the Southern District of Illinois.  At the time of the events described herein, it employed directly or indirectly each of the individual defendants.

13. The Granite City Police Department ("GCPD") is a division of the municipal corporation and is existing as the law enforcement authority for the municipality so named.  GCPD , through its department heads and others, created, adopted and/or enforces all policies, protocols and best practices relative to the arrest, transport, detainment and jailing of individuals, including those individuals suspected of being under the influence of illegal drugs, of diminished decision making capability, expressing fear and paranoia of police officers or otherwise in need of medical treatment or clearance while in police custody.

14. The Granite City Fire Department ("GCFD") is a division of the municipal corporation and is responsible for responding to 911-based medical emergencies and is

so dispatched to assist and provide medical evaluation, care, and transport, including emergency medical transport of arrestees and those individuals in the custody of the Granite City police; in addition, these firefighters and paramedics are responsible for providing on-scene emergency physical and mental health care assessment and intervention for those whose health, safety and welfare is in jeopardy, including while said individuals are in custodial arrest or detainment of the Granite City police.

15. GCFD, acting through its department heads, paramedics, fire fighters and others, is responsible for creating and enforcing those policies, protocols and practices relative to providing emergency medical evaluation, transport and pre-hospital care for those individuals in the need of the same; including individuals known to be under the influence of intoxicating drugs and/or suspected of experiencing an active overdose from illegal drug consumption, including fentanyl.  GCFD is also responsible for the pre-hospital care of those individuals complaining of orthopedic or similar injuries at those scenes to which it is dispatched or while such individuals are in the care of GCPD.

### Facts

16. On May 16, 2020 at approximately 8:30 p.m., a 911 call was placed by the plaintiff's husband and therein he stated that plaintiff's decedent had entered their premises in violation of a previously entered order of protection and plaintiff's decedent was believed to be hiding in the basement.  The caller also stated plaintiff's decedent was suspected of actively overdosing on drugs.  Mr. Mullins further advised the decedent was displaying signs of paranoia, specifically that the police were chasing him.  The police had not been pursuing plaintiff's decedent on May 16, 2020.

17.  At approximately 8:39 p.m. on May 16, 2020, police officers Hartin, Nicolussi, Opel and Ryal and fire department paramedics, Brooks and Black, responded to the plaintiff's residence.

18.  Officer Hartin entered the plaintiff's basement and found Chrismer on the floor wedged between the furnace and a wall.  Chrismer was ordered by Hartin to stand up, but Chrismer advised the officer he was unable to do so.

19.  Officer Hartin, now assisted by Officer Nicolussi, pulled Chrismer away from the furnace and attempted to force Chrismer to stand.  Chrismer was unable to stand and he was returned to the floor by the police officers.  There was no apparent or known explanation for Chrismer's inability to stand or walk.

20.  This development resulted in radio transmission between police officers in the basement, the GCFD personnel located outside the residence, the GCPD dispatch and other responding police officers.  That the defendants, each of them, knew and were told that plaintiff's decedent was under the influence of fentanyl and possibly overdosing.

21.  As a result of the communications, additional police and fire department personnel entered the plaintiff's premises.  Granite City Fire Department personnel brought to the basement a flexible stretcher.

22.  At approximately 8:44 p.m., Officers Hartin, Nicolussi, Opel, Ryal and paramedics Brooks, Black and GCFD Commander Schmidtke transported Chrismer outside the residence using the flexible stretcher.

23. After removal of Chrismer from the residence, empty drug paraphernalia was found in the basement where Chrismer had been laying.

24. Those defendants on scene knew the plaintiff's decedent was unable to stand or walk, was acting obtunded, and required physical assistance to make significant movements. They also knew it was likely certain that Chrismer was under the influence of fentanyl or similar intoxicant.

25. Notwithstanding the objective need for emergency healthcare, GCFD paramedics refused to initiate the pre-hospital intervention required by the circumstances, failed to evaluate Chrismer's physical and psychological condition and refused to transport Chrismer to a hospital for proper assessment, evaluation, treatment or medical clearance. Instead, the GCFD allowed Chrismer to be transported to the Granite City Police Department.

26. GCFD either had not been trained to intervene and aid individuals known to be in need of pre-hospital evaluation, transport and stabilization due to the influence of street drugs and/or undiagnosed physical injury, or they, each of them, knowingly disregarded all such standards, training and instructions.

27. Notwithstanding the objective need for emergency pre-hospital intervention, GCPD refused and failed to initiate any intervention to combat Chrismer's drug intoxication, failed to perform a physical assessment and failed to ascertain his mental capabilities or transport him to a hospital or other location where he could receive appropriate life saving care or obtain medical clearance.

28. With the consent of the GCFD, and in the absence of a proper medical or psychological clearance, Officer Nicolussi, with the assistance of Officers Opel and Ryal, laid Chrismer (still prone on the flexible stretcher) in the back seat of GCPD patrol car #23 and transported him to the Granite City Police Department.

29. Unable to sit upright, Chrismer was transported to the sally port of the Granite City Police Department. Still laying on the fire department's collapsible stretcher, Chrismer was removed from the back seat of the patrol car by GCPD Officers Hartin, Nicolussi, Rayl and Opel and placed in a GCPD jail holding cell at approximately 9:00 p.m.

30. After Chrismer was removed from the patrol car, Officer Rayl located a clear glass pipe in the rear of the transport vehicle. Officer Rayl recognized this as illegal drug paraphernalia.

31. While inventorying Chrismer's personal property, Sergeant Skalsky discovered three small clear bags that were empty. Sergeant Skalsky recognized this packaging to be associated with illegal drug use.

32. Notwithstanding all of the foregoing, a largely unresponsive Chrismer was laid on the floor of the jail's holding cell. The GCPD has claimed to have visually inspected Chrismer in his cell at 9:26 p.m. and again at 9:28 p.m. This was apparently done by looking through a window from outside the cell door. On both occasions Chrismer was found to be laying on the floor in substantially the same location and position as when initially placed in the holding cell. Although there had been no proper medical clearance, no assessment of Chrismer's physical condition or health needs, Chrismer remained unattended.

33. At approximately 9:41 p.m., Sergeant Skalsky entered the holding cell to more closely observe Chrismer. Now recognizing Chrismer was likely in cardiac and respiratory distress, Skalsky requested assistance from Officer Brandon Hartin. Now fearing the decedent was experiencing a drug overdose, a Narcan pouch was retrieved

by Skalsky and administered to Chrismer. Officer Hartin initiated CPR. Receiving no positive response for their efforts, a second Narcan dose was administered. Chrismer remained unresponsive. He was next removed from the holding cell to the Sally Port. A call was placed to the GCFD for additional assistance.

34. At approximately 9:47 p.m. paramedics from GCFD arrived at the GCPD and pronounced Chrismer deceased.

35. The Illinois State Police ("ISP") was contacted shortly after Chrismer was pronounced dead. ISP contacted the plaintiff and advised her son died while in the custody of GCPD. ISP advised plaintiff that her son died of a fentanyl overdose. No other significant details have been provided to plaintiff, although she has sought specific details of her son's death.

36. Postmortem toxicology testing indicated the presence of methamphetamines, amphetamines, opiates, cocaine, fentanyl, and marijuana in Chrismer's system. Notwithstanding the passage of nearly twelve (12) months, the coroner's office has yet to hold its inquest or release the deceased's autopsy.

## FEDERAL CLAIMS

37. From the time Chrismer was first in their custody and/or care on May 16, 2020, the defendants knew of Chrismer's serious and urgent medical needs, but nevertheless none of them provided him the necessary medical assessment, evaluation, intervention, care and/or transport to which he was entitled.

38. From approximately the time the initial 911 call was placed at approximately 8:30 p.m. on May 16, 2020, Chrismer was in GCPD custody, including while he was in plaintiff's basement, and the defendants (each of them) knew of Chrismer's need for

urgent medical attention to sustain his life and yet continually disregarded and were indifferent to his health and safety needs.

39. GDFC knew from objective circumstances present, observed and known to them at the plaintiff's residence, that the decedent required evaluation and medical clearance that could not be achieved in a pre-hospital setting. Under such circumstances, it was a deviation from the standard of care for an EMS crew to permit Chrismer to be removed from the scene in a Granite City patrol car, knowing he was destined for a police holding cell.

40. All of the defendants were aware of Chrismer's objectively serious health crisis due to his physical and mental presentation, his stepfather's statements, the deceased's statements, his prior known history of drug use, his psychiatric disturbance and the presence of drug paraphernalia in the basement, transport vehicle and located in the decedent's personal effects. Notwithstanding, his dire healthcare needs were ignored and his constitutional right to medical treatment was denied.

41. Given Chrismer's entire presentation, a reasonable police officer and firefighter/paramedic/EMS, would understand that failing to follow their training and protocols relevant to the situation presented, including appropriately assess the deceased's physical and mental, achieve a reliable medical clearance, including arrange Chrismer's transport to a hospital where he could receive emergency medical evaluation and care, violated his constitutional rights as guaranteed by the Eighth (8th) and Fourteenth (14th) Amendments to the U.S. Constitution.

42. The defendants, individually and in concert with one another, intentionally, willfully, maliciously and while acting under color of state law, demonstrated a deliberate

indifference to Chrismer's health needs, including his urgent need for medical assistance and intervention; these defendants had actual knowledge of his compromised physical and mental condition and yet did not provide appropriate transport, medical intervention and assistance to which he was entitled and which was necessary to preserve his life.

43. Granite City, its department heads, police and fire department personnel's failure to have and/or follow adequate policies, customs and/or practices relative to evaluation and clearance of detained and arrested individuals, and its failure to enforce or execute those in existence, resulted in the deprivation of Chrismer's constitutional right to post custodial detainment healthcare. These failures demonstrate a deliberate indifference to the rights of individuals, such as Chrismer, who are in need of medical attention, clearance and hospital transport, including while in police custody and/or detainment.

44. The defendants, individually and in concert with one another, through the policies and procedures instituted by Granite City, Granite City Police Department, Granite City Fire Department, the department heads and officers, festered an environment which led to and created the deliberate indifference to Chrismer's serious needs in contravention of his civil rights.

45. As a direct and proximate result of the deprivation of Chrismer's constitutional rights, he suffered general and specific damages and is entitled to relief under 42 USC 1983.

46. In addition to the foregoing, defendant Granite City was negligent and utterly indifferent in its training and supervision of the Granite City Police Department, Granite

City Fire Department and their department heads, employees, officers and paramedics, including in its failure to create and enforce suitable policies, protocols and ordinances.

47. Chrismer's rights to proper medical care as secured by the 8th and 14th Amendments to the Constitution of the United States and by 42 U.S.C. 1983 was denied to him by the defendants, each of them, individually and collectively, while acting under the color of state law.

## STATE LAW CLAIMS

48. As a result of the defendants' conduct, plaintiff suffered the loss of her son, and she and the decedent's surviving next of kin were deprived of his love, and society and they experienced immeasurable grief.  The deceased lost the enjoyment of his future life expectancy and economic loss.  These losses were a wrongful death under 740 ILCS 180/1, et seq. and the Chrismer's estate is entitled to damages recoverable for the same.

49. As a result of the defendants' conduct, and in addition to the foregoing, Chrismer suffered conscious pain and suffering from the onset of the first wrongful act until his death, and the same constitutes damages in accordance with 755 ILCS 5/27-6 and commonly known as the "Survival Act."

50. In accordance with 735 ILCS 5/2-622 counsel for plaintiff attaches his affidavit (Exhibit A) attesting to the fact that he was consulted with and reviewed the facts set forth herein with a knowledgeable medical doctor.  The reviewing medical examiner's report is attached hereto as Exhibit B.

WHEREFORE, plaintiff, Larissa Mullens, administrator of the estate of Dakota Chrismer, prays this court enter judgment in her favor and against the defendants,

Granite City, Illinois, a municipal Corporation, Officer Brandon Hartin, Sergeant Justin Rayl, Sergeant Bradley Skalsky, Officer Joseph Nicolussi, Officer Zachary Opel, Commander Bryan Schmidtke, Thomas O'Neil, Richard Moore, Brendan Brooks and Megan Black, for all permissible damages in an amount greater than Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs; punitive damages; attorney fees and costs as allowed by 42 U.S.C. 1988 and/or any other provision of applicable law; and such other relief as is just.

                                 By:    /s/Lanny Darr
                                        Lanny Darr     (#06205283)
                                        Darr Law Offices, Ltd.
                                        307 Henry Street, Suite 406
                                        Alton, IL  62002
                                        Phone:  (618) 208-6828
                                        Fax:  (618) 433-8519
                                        darr@darrfirm.com