UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LARISSA MULLEN, Special Administrator of the Estate of Dakota Chrismer,<br><br>    Plaintiff,<br><br>    v.<br><br>GRANITE CITY, ILLINOIS; BRANDON HARTIN; JUSTIN RAYL; BRADLEY SKALSKY; JOSEPH NICOLUSSI; ZACHARY OPEL; BRYAN SCHMIDTKE; THOMAS O'NEIL; RICHARD MOORE; BRENDAN BROOKS; and MEGAN BLACK,<br><br>    Defendants. | Case No. 21-cv-472-JPG |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of defendant Granite City, Illinois, to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) (Doc. 11). Plaintiff Larissa Mullen has responded to the motion (Doc. 28), and Granite City has replied to that response (Doc. 29).

**I.      Standard for Dismissal**

When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a

right to relief above a speculative level.  *Bell Atl.*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl.*, 550 U.S. at 556).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

In *Bell Atlantic*, the Supreme Court rejected the more expansive interpretation of Rule 8(a)(2) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  *Bell Atl.*, 550 U.S. at 561-63; *Concentra Health Servs.*, 496 F.3d at 777.  Now "it is not enough for a complaint to avoid foreclosing possible bases for relief;  it must actually suggest that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above the speculative level.'" *Concentra Health Servs.*, 496 F.3d at 777 (quoting *Bell Atl.*, 550 U.S. at 555).

Nevertheless, *Bell Atlantic* did not do away with the liberal federal notice pleading standard.  *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).  A complaint still need not contain detailed factual allegations, *Bell Atl.*, 550 U.S. at 555, and it remains true that "[a]ny district judge (for that matter, any defendant) tempted to write 'this complaint is deficient because it does not contain . . .' should stop and think:  What rule of law *requires* a complaint to contain that allegation?" *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005) (emphasis in original).  Nevertheless, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell*

2

*Atl.*, 550 U.S. at 555.  If the factual detail of a complaint is "so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8," it is subject to dismissal.  *Airborne Beepers*, 499 F.3d at 667.

## II.     Facts

Accepting all well-pleaded facts as true, and drawing all reasonable inferences in the plaintiff's favor, the allegations establish the following relevant facts.

Plaintiff Larissa Mullen is the mother of the decedent Dakota Chrismer.  Before his death, Chrismer had diminished capacity due to drug abuse and mental illness and had been periodically admitted to inpatient psychiatric care.  Mullen and her husband had obtained an order of protection ("OP") against Chrismer.

The events giving rise to this case began on the evening of May 16, 2020, at about 8:30 p.m. when Mullen's husband called 911 and reported Chrismer was hiding in their basement in violation of the OP.  He further reported he thought Chrismer was overdosing on drugs at the time and that Chrismer had expressed paranoia that the police were chasing him when, in fact, they were not.  Defendants Brandon Hartin, Justin Rayl, Joseph Nicolussi, Zachary Opel—all police officers with the Granite City Police Department ("GCPD")—and defendants Brendan Brooks and Megan Black—both paramedics with the Granite City Fire Department ("GCFD")—responded to the 911 call.

Hartin and Nicolussi found Chrismer in the basement and ascertained that he was unable to stand up.  The paramedics and other police officers put Chrismer on a stretcher and took him outside the Mullens' home.  Once Chrismer was removed from the basement, the defendants found drug paraphernalia where he had been laying on the ground.  Nevertheless, the paramedics did not evaluate, stabilize, or treat Chrismer.  Instead, the defendants placed Chrismer, still on

the stretcher, in the back seat of a police car, which took him to the GCPD station rather than to a hospital.

At the police station, the officers put Chrismer on the floor of a holding cell at approximately 9:00 p.m.; he was still largely unresponsive. Officers found drug paraphernalia near Chrismer—a glass pipe in the back seat of the police car where Chrismer had been—and on his person—empty baggies of the type often connected with illegal drug use. Officers visually inspected Chrismer from a window in the cell door two times within the half hour after his being placed in the holding cell and found his position unchanged. No evaluation of Chrismer's health condition occurred.

At approximately 9:41 p.m., defendant Sergeant Bradley Skalsky went into the holding cell and recognized that Chrismer was likely in cardiac arrest and respiratory distress. Skalsky administered Narcan, a medication to reverse an opioid overdose, and Hartin started CPR. Seeing no response, Skalsky administered a second dose of Narcan. Paramedics arrived at approximately 9:47 p.m. and pronounced Chrismer deceased. The cause of death was determined to be a fentanyl overdose, although Chrismer had a number of other drugs in his system as well.

In May 2021, Mullen filed this lawsuit alleging that the individual defendants failed to reasonably respond to Chrismer's known medical needs in violation of his Eighth and Fourteenth Amendment rights. The plaintiff faults Granite City for its police and fire departments' "failure to have and/or follow adequate policies, customs and/or practices relative to evaluation and clearance of detained and arrested individuals, and its failure to enforce or execute those in existence, result[ing] in the deprivation of Chrismer's constitutional right to post custodial detainment healthcare." Pl.'s Compl. ¶ 43 (Doc. 1). She claims that these failures created the

environment that led to deliberate indifference to Chrismer's needs and violation of his constitutional rights. She also claims Granite City was "negligent and utterly indifferent in its training and supervision of the Granite City Police Department, Granite City Fire Department and their department heads, employees, officers and paramedics, including in its failure to create and enforce suitable policies, protocols and ordinances." Pl.'s Compl. ¶ 48 (Doc. 1). She also brings state law wrongful death and survival actions.

Granite City now asks the Court to dismiss the plaintiff's Eighth and Fourteenth Amendment claims against it under 42 U.S.C. § 1983 on the grounds that she has failed to allege an official municipal policy or custom that caused a constitutional violation or that the policy or custom was the moving force behind the violation. It further claims the plaintiff has failed to state facts for her state law claims showing *respondeat superior* liability or negating the immunity provided by the Illinois Local Government and Governmental Employees Tort Immunity Act ("TIA"), 745 ILCS 10/2-202. The plaintiff asserts her pleadings are adequate and that the Emergency Medical Services Systems Act ("EMS Systems Act"), 210 ILCS 50/3.150(a), not the TIA, applies in this case.

**III.    Analysis**

      A.    Federal Claims under 42 U.S.C. § 1983

In these claims, the plaintiff asserts violations of Chrismer's Eighth and Fourteenth Amendment rights for the failure to provide adequate medical care. However, because Chrismer was an arrestee who had not yet had a probable cause hearing pursuant to *Gerstein v. Pugh*, 420 U.S. 103 (1975), the plaintiff's claims are governed by the Fourth Amendment's objective reasonableness standard. *Ortiz v. City of Chi.*, 656 F.3d 523, 530 (7th Cir. 2011). This failure to cite the proper legal theory for a claim does not subject the claim to dismissal as long as some

legal theory is viable. Indeed, it is settled federal practice that plaintiffs do not have to plead claims or theories by name or citation, *see Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (summarily reversing dismissal of action for failure to identify legal theory in complaint); *Title Indus. Assur. Co., R.R.G. v. First Am. Title Ins. Co.*, 853 F.3d 876, 880 (7th Cir. 2017), and if they get the wrong theory, it is not fatal to their complaint as long as some relief is possible under the facts pled, *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). With this understood, the Court proceeds to determine whether the plaintiff has adequately pled a Fourth Amendment claim against Granite City.

The law is clear that a municipality such as Granite City may not be held vicariously liable for actions of its employees under § 1983 on a *respondeat superior* theory. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403-04 (1997); *J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020) (*en banc*), *cert. denied*, 141 S. Ct. 1125, (2021) (mem.). However, it can be liable under § 1983 when the institution itself, by its own action or decision not to act, *caused* the deprivation of rights. *Monell*, 436 U.S. at 691-92; *J.K.J.*, 960 F.3d at 377; *Glisson v. Ind. Dep't of Corrs.*, 849 F.3d 372, 381 (7th Cir. 2017). Under *Monell*, a municipality can be liable under § 1983 if (1) it had an express policy calling for constitutional violations (2) it had a widespread practice of constitutional violations that was so permanent and well settled as to constitute a custom or usage with the force of law or (3) if a person with final policymaking authority for the county caused the constitutional violation. *Monell*, 436 U.S. at 694; *J.K.J.*, 960 F.3d at 377; *Glisson*, 849 F.3d at 379. A municipality is liable only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," is the moving force behind the constitutional violation. *Monell*, 436 U.S. at 694; *Brown*, 520 U.S. at

404; *J.K.J.*, 960 F.3d at 377.  The plaintiff "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  *Brown*, 520 U.S. at 404; *see Monell*, 436 U.S. at 694; *J.K.J.*, 960 F.3d at 377.

Where there is no direct municipal policy or direction to violate legal rights but where it is alleged that the municipality caused an employee to do so by failing to take some action, a "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."  *Brown*, 520 U.S. at 405; *see First Midwest Bank v. City of Chi.*, 988 F.3d 978, 986-87 (7th Cir. 2021).  The failure to act can be tantamount to a "policy of inaction" where the municipality "has notice that its program will cause constitutional violations."  *J.K.J.*, 960 F.3d at 379-80 (citing *Connick v. Thompson*, 563 U.S. 51, 61-62 (2011); *Brown*, 520 U.S. at 410); *see Glisson*, 849 F.3d at 382.  Notice can come from a risk that is "known or obvious"—that is, that there was a prior pattern of similar constitutional violations or that the need was obvious and likely to result in a constitutional violation if not addressed.  *J.K.J.*, 960 F.3d at 380 (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

The Court agrees with the defendants that the plaintiff's current allegations are inadequate to plead a *Monell* cause of action.  When a plaintiff attempts to allege a municipality's liability under a *Monell* theory, the plaintiff must do more than point to a municipal employee's misconduct and then claim that it happened because the municipality lacked a policy to prevent it or trained an employee inadequately.  On the contrary, under the *Bell Atlantic/Iqbal* standard, a plaintiff must plead facts that allow the Court to draw the reasonable inference that the municipality actually had a policy, custom, or widespread practice

7

that caused the constitutional violation. *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011). A naked statement that a policy or practice exists and caused a constitutional violation is not enough to withstand a motion to dismiss. *Justice v. Town of Cicero*, 577 F.3d 768, 773, (7th Cir. 2009). The plaintiff must plead a "specific pattern or series of incidents" to support an allegation that a custom or policy existed. *Hollins v. City of Milwaukee*, 574 F.3d 822, 827 (7th Cir. 2009); *see Nelson v. City of Chi.*, 992 F.3d 599, 607 (7th Cir. 2021).

Here, the Complaint alleges essentially that, because the officers responding to the emergency call committed constitutional torts, Granite City's police and fire departments' policies, training and supervision were inadequate. The naked conclusion that there was a policy of inadequate training or supervision simply because individual officers violated an individual's constitutional rights is not enough to plausibly suggest a claim against the municipality. On the contrary, the Complaint's boilerplate allegations are insufficient to satisfy even liberal federal notice pleading standards. *See McTigue v. City of Chi.*, 60 F.3d 381, 382-83 (7th Cir. 1995). Indeed, read as a whole, the Complaint generally conveys the notion that Granite City should be vicariously liable as an employer because its employees did not treat Chrismer reasonably in the particular circumstances, a theory that is not available to prove § 1983 liability. However, because the Court believes the plaintiff may be able to adequately plead a *Monell* claim given another chance, the Court will allow her a reasonable opportunity to file an amended complaint.

      B.    <u>State Law Claims</u>

Granite City asks the Court to dismiss the plaintiff's state law claims against it on two grounds. First, it claims the plaintiff has failed to state facts supporting *respondeat superior* liability on her state claims, which, unlike federal § 1983 claims, can be based on vicarious liability. This argument has no basis. Reading the Complaint as a whole, it is clear that the

plaintiff is alleging that the individual defendants are employees of Granite City and that their actions occurred in the scope of their employment as first responders. It would be wholly unreasonable to construe the Complaint otherwise. As a consequence, the Complaint sufficiently alleges that Granite City is vicariously liable for its employees' tortious conduct under a *respondeat superior* theory.

Granite City also claims the plaintiff has failed to plead the kind of willful and wanton conduct that escapes municipal immunity under the TIA for "the execution or enforcement of any law." 745 ILCS 10/2-202. However, immunity under the TIA is an affirmative defense, and "[a] defense is not part of a plaintiff's properly pleaded statement of his or her claim." *Rivet v. Regions Bank*, 522 U.S. 470, 475 (1998). It is for this reason that "a complaint need not anticipate and overcome affirmative defenses." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). The plaintiff's Complaint is not deficient because she fails to plead sufficient facts to overcome a TIA immunity defense.[1]

## IV. Conclusion

For the foregoing reasons, the Court:

- **GRANTS in part** and **DENIES in part** Granite City's motion to dismiss or, in the alternative, for a more definite statement (Doc. 11);

- **DISMISSES without prejudice** the plaintiff's § 1983 claims against Granite City;

- **ORDERS** that the plaintiff shall have up to and including November 5, 2021, to file an amended complaint repleading her § 1983 *Monell* claims against Granite City;

- **WARNS** her that if she fails to amend her pleading in a timely manner, the Court may construe her failure to amend as an admission that she cannot plead a viable claim and will convert the dismissal to with prejudice; and

---

[1] The Court need not decide at this stage whether the TIA or the EMS Systems Act provides the appropriate affirmative defense for the plaintiff's claim or whether the choice would ultimately make a difference in the outcome.

- **DIRECTS** the plaintiff to consult Local Rule 15.1 regarding underlining of new material in amended pleadings.

**IT IS SO ORDERED.**
**DATED:  October 13, 2021**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
