UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LARISSA MULLEN, Special Administrator of the Estate of Dakota Chrismer,<br><br>     Plaintiff,<br><br>     v.<br><br>GRANITE CITY, ILLINOIS; BRANDON HARTIN; JUSTIN RAYL; BRADLEY SKALSKY; JOSEPH NICOLUSSI; ZACHARY OPEL; BRYAN SCHMIDTKE; THOMAS O'NEIL; RICHARD MOORE; BRENDAN BROOKS; and MEGAN BLACK,<br><br>     Defendants. | Case No. 21-cv-472-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the second motion of defendant Granite City, Illinois, to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 62). Plaintiff Larissa Mullen has responded to the motion (Doc. 85), and Granite City has replied to that response (Doc. 86).

**I.     Standard for Dismissal**

As the Court explained in its October 2021 order (Doc. 44) granting Granite City's first motion to dismiss, when considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well pleaded allegations in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the

plaintiff has a right to relief above a speculative level.  *Bell Atl.*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl.*, 550 U.S. at 556).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal,* 556 U.S. at 679.

**II.**     **Facts**

The Amended Complaint is remarkably similar to the Complaint in its factual allegations, so the Court simply restates the facts from its earlier order:

> Plaintiff Larissa Mullen is the mother of the decedent Dakota Chrismer.  Before his death, Chrismer had diminished capacity due to drug abuse and mental illness and had been periodically admitted to inpatient psychiatric care.  Mullen and her husband had obtained an order of protection ("OP") against Chrismer.
> The events giving rise to this case began on the evening of May 16, 2020, at about 8:30 p.m. when Mullen's husband called 911 and reported Chrismer was hiding in their basement in violation of the OP.  He further reported he thought Chrismer was overdosing on drugs at the time and that Chrismer had expressed paranoia that the police were chasing him when, in fact, they were not.  Defendants Brandon Hartin, Justin Rayl, Joseph Nicolussi, Zachary Opel—all police officers with the Granite City Police Department ("GCPD")—and defendants Brendan Brooks and Megan Black—both paramedics with the Granite City Fire Department ("GCFD")—responded to the 911 call.
> Hartin and Nicolussi found Chrismer in the basement and ascertained that he was unable to stand up.  The paramedics and other police officers put Chrismer on a stretcher and took him outside the Mullens' home.  Once Chrismer was removed from the basement, the defendants[1] found drug paraphernalia where he had been laying on the ground.  Nevertheless, the paramedics did not evaluate, stabilize, or treat Chrismer.  Instead, the defendants placed Chrismer, still on the stretcher, in the back seat of a police car, which took him to the GCPD station rather than to a hospital.
> At the police station, the officers put Chrismer on the floor of a holding cell at approximately 9:00 p.m.; he was still largely unresponsive.  Officers found

---

[1] The plaintiff's pleadings refer generally to "the defendants" without specifying which individual defendants were involved.

> drug paraphernalia near Chrismer—a glass pipe in the back seat of the police car where Chrismer had been—and on his person—empty baggies of the type often connected with illegal drug use. Officers visually inspected Chrismer from a window in the cell door two times within the half hour after his being placed in the holding cell and found his position unchanged. No evaluation of Chrismer's health condition occurred.
>
> At approximately 9:41 p.m., defendant Sergeant Bradley Skalsky went into the holding cell and recognized that Chrismer was likely in cardiac arrest and respiratory distress. Skalsky administered Narcan, a medication to reverse an opioid overdose, and Hartin started CPR. Seeing no response, Skalsky administered a second dose of Narcan. Paramedics arrived at approximately 9:47 p.m. and pronounced Chrismer deceased. The cause of death was determined to be a fentanyl overdose, although Chrismer had a number of other drugs in his system as well.

Mem. & Order 3-4, Oct. 13, 2021 (Doc. 44).

One of the claims Mullen attempts to bring in this suit is a claim against Granite City for its police and fire departments' failure to have or enforce, and failure to train its employees on, adequate policies regarding providing appropriate medical treatment of detainees. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). The Court dismissed these claims as pled in Mullen's original Complaint because the allegations did not plausibly suggest a *Monell* claim against the municipality. Mullen added a couple of additional phrases in her Amended Complaint:

In paragraph 27, Mullen pleads that the GCPD failed to assess, treat, and seek attention for Chrismer, and then adds,

> "This was due, at least in part, to the fact Granite City failed to create any policies or protocols that required its police officers or fire personnel to seek medical clearance of arrestees that presented characteristics similar to Dakota Ch[ris]mer on May 16, 2020."

In paragraph 40, Mullen pleads that the defendants were aware of Chrismer's serious health condition but ignored his healthcare needs, and then adds,

> "This failure to secure medical attention at a hospital was due, at least in part, to the lack of a written or verbal policy requiring that Granite City's police and fire rescue personnel assess and transport detained and arrested individuals to a hospital for healthcare

3

> evaluation under the objective circumstances presented by Dakota Chrismer on May 16, 2020.  Granite City failed to enact any such policy, protocol or directive notwithstanding the fact Chrismer's right to life preserving healthcare treatment was and had been firmly established under the United State Constitution as interpreted and enforced by federal courts.  This failure to create a policy addressed to assessing and preserving the life sustaining health care needs of those under arrest, notwithstanding the constitutional mandate to do so, demonstrated the City's conscious indifference to Ch[ris]mer's health care needs."

Am. Compl. 6 & 9-10 (Doc. 60).  Granite City again seeks dismissal on the grounds that the allegations still are not sufficient to state a claim for which relief can be granted.

### III.     Analysis

In her claims against Granite City, Mullen asserts violations of Chrismer's Fourth Amendment rights to be free from unreasonable search and seizure.  *Ortiz v. City of Chi.*, 656 F.3d 523, 530 (7th Cir. 2011).  Granite City can be liable under 42 U.S.C. § 1983 for violation of an arrestee's Fourth Amendment rights if the municipality itself, by its own action or conscious decision not to act, *caused* the deprivation of rights.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691-92 (1978); *J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020) (*en banc*); *Glisson v. Ind. Dep't of Corrs.*, 849 F.3d 372, 381 (7th Cir. 2017) (*en banc*).  Mullen has clarified that she is asserting Granite City had a conscious policy of *inaction*—the failure to promulgate certain policies—in light of notice that inaction was highly likely to cause a constitutional violation.

Where claims that inaction caused a constitutional violation are involved, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."  *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 405 (1997); *see First Midwest Bank v. City of Chi.*, 988 F.3d 978, 986-87 (7th Cir. 2021).  The failure to act can be tantamount to a "policy of inaction" where the municipality "has notice that its program will cause constitutional violations."  *J.K.J.*, 960 F.3d at 379-80 (citing *Connick v. Thompson*, 563 U.S. 51, 61-62 (2011); *Brown*, 520 U.S. at 410); *see Glisson*, 849

4

F.3d at 382.

Notice to a municipality can come from a risk that is "known or obvious"—that is, that there was a prior pattern of similar constitutional violations or that the need was obvious and likely to result in a constitutional violation if not addressed. *J.K.J.*, 960 F.3d at 379-80 (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). For example, in *Canton*, 489 U.S. at 390 n.10, the Supreme Court noted that it was obvious that police officers carrying firearms would be required to arrest fleeing felons, so a municipality's failure to train on the use of deadly force could reasonably be viewed as deliberate indifference to an individual's risk of excessive force during arrest.

Mullen's new allegations add little new factual content to her pleading, but they clarify the nature of her claim, which is enough to nudge the case over the *Bell Atlantic/Iqbal* line based on the existing factual allegations. While the Court finds it hard to believe Granite City had *no* policy whatsoever—after all, paramedics were at the scene to provide medical attention—it appears to have had gaps that allowed—and allegedly caused—Chrismer's needs not to be met. Mullen's Amended Complaint can be broadly read to plead a municipal policy of deliberate inaction to adequately address the medical needs of arrestees, to adequately train of municipal employees on policies that existed, or to adequately enforce those policies. That is enough to nudge this case over the line from possible to plausible, and the parties can flesh out the details in discovery.

If there is no evidence from which a reasonable jury could find that Granite City knew or that it was patently obvious that its existing system for providing medical care to arrestees, particularly those who had overdosed, would cause constitutional violations, Granite City may so argue on summary judgment. Mullen will then have to point to evidence not simply that

5

Chrismer died under the existing system but that Granite City deliberately failed to fix a known or patently obvious constitutional problem and that this failure, as opposed to any failures of Granite City's agents, was the moving force behind Chrismer's death.

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** Granite City's motion to dismiss (Doc. 62).

**IT IS SO ORDERED.**
**DATED: May 4, 2022**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
