# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LARISSA MULLEN, Special Administrator of the Estate of Dakota Chrismer,<br><br>    Plaintiff,<br><br>v.<br><br>GRANITE CITY, ILLINOIS, a Municipal Corporation, Officer BRANDON HARTIN, Sergeant JUSTIN RAYL, Sergeant BRADLEY SKALSKY, Officer JOSEPH NICOLUSSI, Officer ZACHARY OPEL, Commander BRYAN SCHMIDTKE, Paramedic THOMAS O'NEIL, Paramedic RICHARD MOORE, Paramedic BRENDAN BROOKS, and Paramedic MEGAN BLACK,<br><br>    Defendants. | 21-cv-00472-JPG |

## ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW Defendant GRANITE CITY, ILLINOIS, a municipal corporation, by and through its attorney, ERIN M. PHILLIPS of Unsell, Schattnik & Phillips, P.C. and for its Answer to Plaintiff's First Amended Complaint states as follows:

## JURISDICTION AND VENUE

1. This is an action for the money damages.

**ANSWER:**     **Admit.**

2. Jurisdiction for Plaintiff's federal claims are based on 28 U.S.C. § 1331 and 1343(a).

**ANSWER:**     **Admit.**

3. Venue is proper in this Court pursuant to 28 U.S.C § 1391(b), in that all defendants exist or reside in this judicial district and the event giving rise to the claims arose in this district.

**ANSWER:** Admit.

4. Plaintiff, Larissa Mullen, is the administrator of Dakota Chrismer's estate and seeks redress for the deprivation under color of law of the rights of her son, Dakota Chrismer, as secured under the Constitution and Statutes of the United States, specifically the Fourth (4th) Amendment and Fourteenth (14th) Amendments of the United States Constitution, 42 U.S.C. 1983, 1988 and Illinois laws regarding negligence and wrongful death.

**ANSWER:** **Defendant Granite City admits the allegations contained in Paragraph No. 4 except to the extent any allegations in Paragraph No. 4 claim Defendant Granite City or any of its employees and/or agents are responsible or liable for the alleged wrongdoings in this suit, Defendant Granite City denies all such allegations contained in Paragraph No. 4.**

5. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. 1367.

**ANSWER:** Admit.

## PARTIES

6. Dakota Chrismer ("Chrismer") was twenty-three (23) years of age when he died on May 16, 2020 due to fentanyl intoxication.

**ANSWER:** **Defendant Granite City, Illinois admits Dakota Chrismer was twenty-three (23) years of age when he died on May 16, 2020. Defendant Granite City denies the remaining allegations in Paragraph No. 6.**

7. At all times mentioned herein, Dakota Chrismer was an individual of diminished capacity due to frequent drug intoxication and secondary mental health illness that resulted in

periodic admission to inpatient psychiatric care. This history was known or available the defendants at the time of the events described herein.

    **ANSWER:**    **Deny.**

8. Plaintiff, Larissa Mullen ("Plaintiff"), is the mother of Dakota Chrismer. She is a resident of Granity City, Illinois. She is the Administrator of her son's estate.

    **ANSWER:**    **Admit.**

9. In addition to the plaintiff, Chrismer has the following surviving next of kin, namely:

Larissa Mullen, Mother
Jeff Seiv, Father
Shaun Mullen, Brother
Courtney Jenkins, Sister
Chelsea Mullen, Sister

    **ANSWER:**    **Defendant Granite City admits that Larrisa Mullen and Shaun Mullen are Chrismer's surviving next of kin. Defendant Granite City denies each and every remaining allegation contained in Paragraph No. 9.**

10. Justin Rayl, Joseph Nicolussi, Zachary Opel, Bradley Skalsky and Brandon Hartin are police officers employed by Granite City and upon information and belief reside and/or committed the below described wrongful acts in the federal district where this action is initiated.

    **ANSWER:**    **Defendant Granite City admits Justin Rayl, Zachary Opel, Bradley Skalsky, and Brandon Hartin are law enforcement officers employed by Granite City and each resides in the federal district. Granite City admits that Joseph Nicolussi was a Granite City Police Officer at the time of the occurrence but has since retired from the Police Department and how holds a different job within the City of Granite City. To the extent the allegations allege these officers or Granite City committed any wrongful acts, Defendant Granite City denies said allegations.**

11. Fire Commander Bryan Schmidtke, Thomas O'Neil, Richard Moore, Brendan Brooks

and Megan Black are paramedics employed by the Granite City Fire Department ("GCFD"). It is believed that all reside in this federal district and/or committed the below described wrongful acts in the federal district.

>**ANSWER:** **Defendant Granite City admits Bryan Schmidtke, Thomas O'Neill (improperly named as Thomas O'Neil), Richard Moore, Brendan Brooks, and Megan Black were employees of the Granite City Fire Department at the time of the incident. Defendant admits Megan Black is a paramedic with the Granite City Fire Department. Defendant admits Brendan Brooks is a paramedic but is no longer employed with the City of Granite City. Defendant admits Thomas O'Neill was a paramedic at the time of the occurrence but is no longer a licensed paramedic but remains a member of the Granite City Fire Department. Defendant denies the remaining allegations of Paragraph No. 11.**

12. Defendant, Granite City, is a municipal corporation situated in the Southern District of Illinois. At the time of the events described herein, it employed directly or indirectly each of the individual defendants.

>**ANSWER:** **Admit.**

13. The Granite City Police Department ("GCPD") is a division of the municipal corporation and is existing as the law enforcement authority for the municipality so named. GCPD, through its department heads and others, created, adopted and/or enforces all policies, protocols and best practices relative to the arrest, transport, detainment and jailing of individuals, including those individuals suspected of being under the influence of illegal drugs, of diminished decision making capability, expressing fear and paranoia of police officers or otherwise in need of medical treatment or clearance while in police custody.

>**ANSWER:** **Defendant Granite City admits the Granite City Police Department is a division of the City of Granite City, a municipal corporation. Defendant Granite City admits Granite City Police Department is the**

> law enforcement body for the City of Granite City. Defendant Granite
> City admits that id develops policies, protocols and practices related
> to the arrest, transport, detainment and jailing of individuals.
> Defendant Granite City denies the remaining allegations contained in
> Paragraph No. 13.

14. The Granite City Fire Department ("GCFD") is a division of the municipal corporation and is responsible for responding to 911- based medical emergencies and is so dispatched to assist and provide medical evaluation, care , and transport, including emergency medical transport of arrestees and those individuals in the custody of the Granite City police; in addition, these firefighters and paramedics are responsible for providing on-scene emergency physical and mental health care assessment and intervention for those whose health, safety and welfare is in jeopardy, including while said individuals are in custodial arrest or detainment of the Granite City police.

> **ANSWER:** Defendant Granite City admits the Granite City Fire Department is a
> division of the municipal corporation and is responsible for
> responding to 911-based medical emergencies, and is dispatched to
> assist and provide medical evaluation, medical care, and transport,
> including emergency medical transport of arrestees and those in the
> custody of the Granite City police. Defendant Granite City denies the
> remaining allegations contained in Paragraph No. 14.

15. GCFD, acting though its department heads, paramedics, fire fighters and others, is responsible for creating and enforcing those policies, protocols and practices relative to providing emergency medical evaluation, transport and pre-hospital care for those individuals in the need of the same; including individuals known to be under the influence of intoxicating drugs and/or suspected of experiencing an active overdose from illegal drug consumption, including fentanyl. GCFD is also responsible for the pre-hospital care of those individuals complaining of orthopedic or similar injuries at those scenes to which it is dispatched or while

such individuals are in the care of GCPD.

    **ANSWER:** Deny.

## FACTS

    16. On May 16, 2020 at approximately 8:30 p.m., a 911 call was placed by the plaintiff's husband and therein he stated that plaintiff's decedent has entered their premises in violation of a previously entered order of protection and plaintiff's decedent was believed to be hiding in the basement. The caller also stated plaintiff's decedent was suspected of actively overdosing on drugs. Mr. Mullen further advised the decedent was displaying signs of paranoia, specifically that the police were chasing him. The police has not been pursuing plaintiff's decedent on May 16, 2020.

    **ANSWER:** **Defendant Granite City admits that on May 16, 2020, at approximately 8:30 p.m., Granite City received a 911 call. Defendant Granite City admits the 911 caller stated his step-son was in the basement and that he had an order of protection against his step-son. Defendant Granite City admits the 911 caller stated that Chrismer "I think he in may be in overdose on fentanyl or something." Defendant Granite City admits that prior to the 911 call, the Granite City Police Department was not pursuing Chrismer on May 16, 2020. Defendant Granite City denies the remaining allegations contained in Paragraph No. 16.**

    17. At approximately 8:39 p.m. on May 16, 2020, police officers, Hartin, Nicolussi, Opel and Rayl and fire department paramedics, Brooks and Black, responded to the plaintiff's residence.

    **ANSWER:** Admit.

    18. Officer Hartin entered the plaintiff's basement and found Chrismer on the floor wedged between the furnace and a wall. Chrismer was ordered by Hartin to stand up, but

Chrismer advised the officer he was unable to do so.

> **ANSWER: Defendant Granite City admits Hartin entered the basement and Chrismer was found between the furnace and the wall. Defendant Granite City admits Chrismer was ordered to stand up. Defendant Granite City denies the remaining allegations contained in Paragraph No. 18.**

19. Officer Hartin, now assisted by Officer Nicolussi, pulled Chrismer away from the furnace and attempted to force Chrismer to stand. Chrismer was unable to stand and he was returned to the floor by the police officers. There was no apparent or known explanation for Chrismer's inability to stand or walk.

> **ANSWER: Defendant Granite City admits that Hartin and Nicolussi removed Chrismer from behind the furnace. Defendant Granite City admits Hartin and Nicolussi tried to get Chrismer to stand. Defendant Granite City denies the remaining allegations contained in Paragraph No. 19.**

20. This development resulted in radio transmission between police officers in the basement, the GCFD personnel located outside the residence, the GCPD dispatch and other responding police officers. That the defendants, each of them, knew and were told that plaintiff's decedent was under the influence of fentanyl and possibly overdosing.

> **ANSWER: Deny.**

21. As a result of the communications, additional police and fire department personnel entered the plaintiff's premises. Granite City Fire Department personnel brought to the basement a flexible stretcher.

> **ANSWER: Defendant Granite City admits Granite City Fire Department personnel entered Plaintiff's premises and brought a flexible stretcher into the basement. Defendant Granite City denies the remaining allegations of Paragraph No. 21.**

22. At approximately 8:44 p.m., Officers Hartin, Nicolussi, Opel, Rayl and paramedics Brooks, Black and GCFD Commander Schmidtke transported Chrismer outside the residence using the flexible stretcher.

> **ANSWER:** Defendant Granite City admits Hartin, Nicolussi, Opel, Rayl, Brooks, and Schmidtke transported Chrismer outside the residence using the flexible stretcher. Defendant Granite City denies the remaining allegations contained in Paragraph No. 22.

23. After removal of Chrismer from the residence, empty drug paraphernalia was found in the basement where Chrismer has been laying.

> **ANSWER:** Deny.

24. Those defendants on scene knew the plaintiff's decedent was unable to stand or walk, was acting obtunded, and required physical assistance to make significant movements. They also knew it was likely certain that Chrismer was under the influence of fentanyl or similar intoxicant.

> **ANSWER:** Deny.

25. Notwithstanding the objective need for emergency healthcare, GCFD paramedics refused to initiate the pre-hospital intervention required by the circumstances, failed to evaluate Chrismer's physical and psychological condition and refused to transport Chrismer to a hospital for proper assessment, evaluation, treatment or medical clearance. Instead, the GCFD allowed Chrismer to be transported to the Granite City Police Department.

> **ANSWER:** Deny.

26. GCFD either had not been trained to intervene and aide individuals known to be in need of pre-hospital evaluation, transport and stabilization due to the influence of street drugs

and/or undiagnosed physical injury, or they, each of them, knowingly disregarded all such standards, training and instructions.

**ANSWER: Deny.**

27. Notwithstanding the objective need for emergency pre-hospital intervention, GCPD refused and failed to initiate any intervention to combat Chrismer's drug intoxication, failed to perform a physical assessment and failed to ascertain his mental capabilities or transport him to a hospital or other location where he could receive appropriate life saving care or obtain medical clearance. This was due, at least in part, to the fact Granite City failed to create any policies or protocols that required its police officers or fire personnel to seek medical clearance of arrestees that presented characteristics similar to Dakota Chrismer on May 16, 2020.

**ANSWER: Deny.**

28. With the consent of the GCFD, and in the absence of a proper medical or psychological clearance, Officer Nicolussi, with the assistance of Officers Opel and Rayl, laid Chrismer (still prone on the flexible stretcher) in the back seat of GCPD patrol car #23 and transported him to the Granite City Police Department.

**ANSWER:** **Defendant Granite City admits the officers placed Chrismer in the backseat of GCPD patrol car #23. Defendant Granite City denies the remaining allegations contained in Paragraph No. 28.**

29. Unable to sit upright, Chrismer was transported to the sally port of the Granite City Police Department. Still laying on the fire department's collapsible stretcher, Chrismer was removed from the back seat of the patrol car by GCPD Officers Hartin, Nicolussi, Rayl and Opel and placed in a GCPD jail holding cell at approximately 9:00 p.m.

**ANSWER:** **Defendant Granite City admits Chrismer was transported to the sally**

port of the Granite City Police Department. Defendant Granite City admits that Chrismer was laying on the fire department's stretcher when he was removed from the back seat of the patrol car by the officers and was placed in a GCPD holding cell at approximately 9:00 p.m. Defendant Granite City denies the remaining allegations of Paragraph No. 29.

30. After Chrismer was removed from the patrol car, Officer Rayl located a clear glass pipe in the rear of the transport vehicle. Officer Rayl recognized this as illegal drug paraphernalia.

    **ANSWER:**    **Admit.**

31. While inventorying Chrismer's personal property, Sergeant Skalsky discovered three small clear bags that were empty. Sergeant Skalsky recognized this packaging to be associated with illegal drug use.

    **ANSWER:**    **Admit.**

32. Notwithstanding all of the foregoing, a largely unresponsive Chrismer was laid on the floor of the jail's holding cell. The GCPD has claimed to have visually inspected Chrismer in his cell at 9:26 p.m. and again at 9:28 p.m. This was apparently done by looking through a window from outside the cell door. On both occasions Chrismer was found to be laying on the floor in substantially the same location and position as when initially placed in the holding cell. Although there had been no proper medical clearance, no assessment of Chrismer's physical condition or health needs, Chrismer remained unattended.

    **ANSWER:**    **Defendant Granite City admits Chrismer was laid on the floor of the cell. Defendant Granite City admits Skalsky visually inspected Chrismer in the cell on four occassions at approximately 9:13 p.m., 9:26 p.m, 9:28 p.m., and 9:39 p.m. by observing Chrismer through the window in the cell door. Defendant Granite City denies the remaining allegations of Paragraph 32.**

33. At approximately 9:41 p.m., Sergeant Skalsky entered the holding cell to more closely observe Chrismer. Now recognizing Chrismer was likely in cardiac and respiratory distress, Skalsky requested assistance from Officer Brandon Hartin. Now fearing the decedent was experiencing a drug overdose, a Narcan pouch was retrieved by Skalsky and administered to Chrismer. Officer Hartin initiated CPR. Receiving no positive response for their efforts, a second Narcan does was administered. Chrismer remained unresponsive. He was next removed from the holding cell to the Sally Port. A call was placed to the GCFD for additional assistance.

> **ANSWER:** **Defendant Granite City admits that at approximately 9:41 p.m., Skalsky requested assistance of Officer Hartin in order to enter the cell to observe Chrismer. Defendant Granite City admits Skalsky retrieved a Narcan pouch and administered it to Chrismer. Defendant Granite City admits that the officers began CPR. Defendant Granite City admits that Chrismer was administered a second dose of Narcan. Defendant Granite City admits a call was placed to Granite City Fire Department for additional assistance. Defendant Granite City admits that Chrismer was then moved to the sally port from the holding cell. Defendant Granite City denies each and every other remaining allegation contained in Paragraph No. 33.**

34. At approximately 9:47 p.m. paramedics from GCFD arrived at the GCPD and pronounced Chrismer deceased.

> **ANSWER:** **Defendant Granite City admits paramedics from GCFD arrived around 9:47 p.m. Defendant Granite City admits Chrismer was later pronounced dead. Defendant Granite City denies the remaining allegations contained in Paragraph No. 34.**

35. The Illinois State Police ("ISP") was contacted shortly after Chrismer was pronounced dead. ISP contacted the plaintiff and advised her son died while in the custody of GCPD. ISP advised plaintiff that her son died of a fentanyl overdose. No other significant details have been provided to plaintiff, although she has sought specific details of her son's death.

ANSWER: Defendant Granite City admits the Illinois State Police were contacted shortly after Chrismer died. Defendant Granite City lacks sufficient information to admit or deny the remaining allegations contained in Paragraph No. 35 and therefore denies same.

36. Postmortem toxicology testing indicated the presence of methamphetamines, amphetamines, opiates, cocaine, fentanyl, and marijuana in Chrismer's system. Notwithstanding the passage of nearly twelve (12) months, the coroner's office has yet to hold its inquest or release the deceased's autopsy.

ANSWER: Defendant Granite City admits toxicology testing indicated the presence of methamphetamines, amphetamines, opiates, fentanyl, caffiene, nicotine, and marijuana and other substances in Chrismer's system. Defendant Granite City denies the remaining allegations contained in Paragraph No. 36.

## FEDERAL CLAIMS

37. From the time Chrismer was first in their custody and/or care on May 16, 2020, the defendants knew of Chrismer's serious and urgent medical needs, but nevertheless none of them provided him the necessary medical assessment, evaluation, intervention, care and/or transport to which he was entitled.

ANSWER: Deny.

38. From approximately the time the initial 911 call was placed at approximately 8:30 p.m. on May 16, 2020, Chrismer was in GCPD custody, including while he was in plaintiff's basement, and the defendants (each of them) knew of Chrismer's need for urgent medical attention to sustain his life and yet continually disregarded and were indifferent to his health and safety needs.

ANSWER: Deny.

39. GCFD knew from objective circumstances present, observed and known to them at the plaintiff's residence, that the decedent required evaluation and medical clearance that could not be achieved in a pre-hospital setting. Under such circumstances, it was a deviation from the standard of care for an EMS crew to permit Chrismer to be removed from the scene in a Granite City patrol car, knowing he was destined for a police holding cell.

**ANSWER:** Deny.

40. All of the defendants were aware of Chrismer's objectively serious health crisis due to his physical and mental presentation, his stepfather's statements, the deceased's statements, his prior known history of drug use, his psychiatric disturbance and the presence of drug paraphernalia in the basement, transport vehicle and located in the decedent's personal effects. Notwithstanding, his dire healthcare needs were ignored and his constitutional right to medical treatment was denied. This failure to secure medical attention at a hospital was due, at least in part, to the lack of a written or verbal policy requiring that Granite City's police and fire rescue personnel assess and transport detained and arrested individuals to a hospital for healthcare evaluation under objective circumstances presented by Dakota Chrismer on May 16, 2020. Granite City failed to enact any such policy, protocol or directive notwithstanding the fact Chrismer's right to life preserving healthcare treatment was and had been firmly established under the United States Constitution as interpreted and enforced by federal courts. This failure to create a policy addressed to assessing and preserving the life sustaining health care needs of those under arrest, notwithstanding the constitutional mandate to do so, demonstrated the City's conscious indifference to Chrismer's healthcare needs.

**ANSWER:** Deny.

41. Given Chrismer's entire presentation, a reasonable police officer and firefighter/paramedic/EMS, would understand that failing to follow their training and protocols relevant to the situation presented, including appropriately assess the deceased's physical and mental, achieve a reliable medical clearance, including arrange Chrismer's transport to a hospital where he could receive emergency medical evaluation and care, violated his constitutional rights as guaranteed by the Eighth (8th) and Fourteenth (14th) Amendments to the U.S. Constitution.

**ANSWER:** Deny.

42. The defendants, individually and in concert with one another, intentionally, willfully, maliciously and while acting under color of state law, demonstrated a deliberate indifference to Chrismer's health needs, including his urgent need for medical assistance and intervention; these defendants had actual knowledge of his compromised physical and mental condition and yet did not provide appropriate transport, medical intervention and assistance to which he was entitled and which was necessary to preserve his life.

**ANSWER:** Deny.

43. Granite City, its department heads, police and fire department personnel's failure to have and/or follow adequate policies, customs and/or practices relative to evaluation and clearance of detained and arrested individuals, and its failure to enforce or execute those in existence, resulted in the deprivation of Chrismer's constitutional right to post custodial detainment healthcare. These failures demonstrate a deliberate indifference to the rights of individuals, such as Chrismer, who are in need of medical attention, clearance and hospital

transport, including while in police custody and/or detainment.

**ANSWER:** Deny.

44. The defendants, individually and in concert with one another, through the policies and procedures instituted by Granite City, Granite City Police Department, Granite City Fire Department, the department heads and officers, festered an environment which led to and created the deliberate indifference to Chrismer's serious needs in contravention of his civil rights.

**ANSWER:** Deny.

45. As a direct and proximate result of the deprivation of Chrismer's constitutional rights, he suffered general and specific damages and is entitled to relief under 42 USC 1983.

**ANSWER:** Deny.

46. In addition to the foregoing, defendant Granite City was negligent and utterly indifferent in its training and supervision of the Granite City Police Department, Granite City Fire Department and their department heads, employees, officers and paramedics, including in its failure to create and enforce suitable policies, protocols and ordinances.

**ANSWER:** Deny.

47. Chrismer's rights to proper medical care as secured by the 8th and 14th Amendments to the Constitution of the United States and by 42 U.S.C. 1983 was denied to him by the defendants, each of them, individually and collectively, while acting under the color of state law.

**ANSWER:** Deny.

### STATE LAW CLAIMS

48. As a result of the defendants' conduct, plaintiff suffered the loss of her son, and she and the decedent's surviving next of kin were deprived of his love, and society and they

experienced immeasurable grief. The deceased lost the enjoyment of his future life expectancy and economic loss. These losses were a wrongful death under 740 ILCS 180/1, et seq. and the Chrismer's estate is entitled to damages recoverable for the same.

    **ANSWER:** **Deny.**

49. As a result of the defendant's conduct, and in addition to the foregoing, Chrismer suffered conscious pain and suffering from the onset of the first wrongful act until his death, and the same constitutes damages in accordance with 755 ILCS 5/27-6 and commonly known as the "Survival Act."

    **ANSWER:** **Deny.**

50. In accordance with 735 ILCS 5/2-622 counsel for plaintiff attaches his affidavit (Exhibit A) attesting to the fact that he was consulted with and reviewed the facts set forth herein with a knowledgeable medical doctor. The reviewing medical examiner's report is attached hereto as Exhibit B.

> **ANSWER:** **Defendant Granite City admits an affidavit and report were attached to this complaint. To the extent these documents allege any wrongdoing occurred, Defendant Granite City denies the allegations contained in Paragraph No. 50.**

WHEREFORE, Defendant Granite City respectfully requests this Court dismiss all claims against it with prejudice and for such other relief as this Court deems appropriate.

### **AFFIRMATIVE DEFENSES**

1. To the extent any of the police officer defendants were working as a police officer in the execution and enforcement of the law, those defendants is immune from liability pursuant the provisions of 745 ILCS 10/2-202. To the extent the individual defendants are immune under 745

ILCS 10/2-202, Defendant Granite City is immune from civil liability under Illinois law in accordance with 745 ILCS 10/2-109.

2. To the extent any individual defendant was acting as a law enforcement officer providing emergency care, said individual defendant is immune from civil liability pursuant to the Illinois Emergency Care Act, 745 ILCS 49/70. To the extent the individual defendants are immune under 745 ILCS 49/70 Defendant Granite City is immune from civil liability under Illinois law in accordance with 745 ILCS 10/2-109.

3. To the extent any individual defendant was a public employee serving in a position involving the exercise of discretion said individual defendant is not liable for an injury resulting from any act or omission in determining policy when acting in the exercise of such discretion pursuant to 745 ILCS 10/2-201. To the extent the individual defendants are immune under 745 ILCS 10/2-201, Defendant Granite City is immune from civil liability under Illinois law in accordance with 745 ILCS 10/2-109.

4. To the extent any individual defendant was acting in the capacity of a first responder and/or paramedic, said individual defendant is immune from civil liability pursuant to Section 17(a) of the Illinois EMS Act, 210 ILCS 50/3.150(a). To the extent the individual defendants are immune under Section 17(a) of the Illinois EMS Act, 210 ILCS 50/3.150(a), Defendant Granite City is immune from civil liability under Illinois law in accordance with 745 ILCS 10/2-109.

5. To the extent that an act and/or omission of any other person besides a defendant, including an act and/or omission of the plaintiff, is the cause of the plaintiff's injuries, Defendant Granite City Defendant Granite City is immune from civil liability under Illinois law in accordance with 745 ILCS 10/2-109.

6. Defendant Granite City as a municipality is immune from punitive damages under both federal and Illinois law.

7. As to the state law claims, to the extent the damages of Plaintiff's decedent were caused in whole or in part by the contributory negligence of Plaintiff and/or Plaintiff's decedent due to actions taken by Plaintiff and/or Plaintiff's decedent, Defendant Granite City is entitled to a reduction in liability and to a reduction in any judgment entered against it by an amount equal to the percentage of fault attributable to Plaintiff and/or Plaintiff's decedent. If Plaintiff and/or Plaintiff's decedent's comparative fault is found to be more than fifty percent (50%), Plaintiff's state law claims are barred by Illinois modified comparative fault provided in 735 ILCS 5/2-1116.

8. To the extent that Plaintiff's First Amended Complaint alleges that the individual defendants failed to make a physical or mental examination or failed to make an adequate physical or mental examination of Dakota Chrisrmer, Defendant Granite City is immune from civil liability under 745 ILCS 10/6-105 and/or 745 ILCS 10/6-106.

**Jury Demand**

Defendant Granite City requests trial by jury in this matter.

/s/ Erin M. Phillips
Erin M. Phillips, #6289723
Unsell, Schattnik & Phillips, P.C.
3 South 6th Street
Wood River, IL 62095
(618)258-1800
erin.phillips7@gmail.com
Attorney for Defendants

**Certificate of Service**

    I hereby certify that on May 17, 2022 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Lanny Darr
    darr@darrfirm.com


    /s/ Erin M. Phillips